## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| TONY CAMPBELL (R-41388), | ) | |
| | ) | |
| Petitioner, | ) | No. 15 C 8192 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| FRANK LAWRENCE, Acting Warden, | ) | |
| Menard Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

### MEMORANDUM OPINION AND ORDER

Petitioner Tony Campbell, a prisoner at Menard Correctional Center proceeding *pro se*,
filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner, who also
represented himself at trial, challenges his 2004 Cook County convictions for murder and armed
robbery. His § 2254 petition argues ineffective assistance by his pretrial attorney, by his attorney
on direct appeal, and by his post-conviction appellate attorney. For the reasons below, the Court
denies the petition and declines to issue a certificate of appealability.

### BACKGROUND[1]

The case is about a fatal shooting during an armed robbery. During the morning of April
10, 2001, Garvey Bernard (the victim) picked up $3,500 from his attorney for a case he had
settled for a car accident. *See* Dckt. 28-5, at 46. Others caught sight of the money, and it cost
Bernard his life.

---

[1] In 28 U.S.C. § 2254 cases, federal courts usually look to state court decisions for background facts,
since § 2254(d) requires federal courts to give deference to the "last reasoned opinion" by a state court.
*Wilson v. Sellers*, 138 S. Ct. 1188, 1194 (2018). In this case, however, the last reasoned state court
opinions addressing Petitioner's § 2254 claims – the state trial court decision denying his 725 ILCS
5/122-1 post-conviction petition and the state appellate court decision addressing his post-conviction
appeal (Dckt. 28-10, at 65-73; Dckt. 28-30) – do not provide many details about the offense.
Accordingly, this Court, like the Respondent, looks to the trial record itself for those facts.

Petitioner spent the day with Bernard, Melvin Gaddy, and John Williams, an acquaintance who testified at trial. *Id.* at 51-52. The four men were drinking and helping Bernard shop for a car. *Id.* at 51-54. After visiting a car lot at 91st Street and Ashland, the men walked through an alley to Petitioner's and Gaddy's apartment at 9135 South Laflin. *Id.* at 54-55. Petitioner and Gaddy went upstairs while Williams and Bernard waited in the alley. *Id.* at 55-56.

After Petitioner and Gaddy returned, the four men continued walking in the alley. *Id.* at 57. Petitioner pulled out a gun and said to Bernard, "Give it up." *Id.* Williams ran. *Id.* at 58. He heard gunshots, turned, and saw Petitioner shooting Bernard. *Id.* at 59. Williams saw Bernard fall and then saw Gaddy go through Bernard's pockets. *Id.* at 60. Gaddy then ran from the scene, hopping over a nearby fence. *Id.* at 60-61. According to Williams, Petitioner then stood over Bernard as he was sprawled on the ground. He shot two more times. *Id.* at 61.

Another eyewitness confirmed Williams's account. Reginald Johnson lived in a third floor apartment on 90th Street in Chicago at the time. *See* Dckt. 28-5, at 76. His kitchen window overlooked the alley. *Id.* at 77. While sitting at his kitchen table, Johnson heard six to seven gunshots. *Id.* at 77-78. He saw three men: one was lying on his back, and the other two were standing over him. *Id.* at 78. "The tall one with the braids went in his pocket, got his wallet, jumped over the fence, ran through the yard." *Id.* at 79. "The shorter guy stood over the guy and shot him above – above his chest, somewhere above the chest." *Id.* Johnson, in court, identified Petitioner as the shooter. *Id.*

Chicago Police Detective John Fassl investigated Bernard's murder. *See* Dckt. 28-6, at 186. Fassl testified that, on April 18, 2001 (a little more than a week after the shooting), he met

with Harold Campbell, Petitioner's uncle or cousin.[2]  *Id.* at 187.  After speaking with Harold Campbell, Fassl accompanied him to a residence in Kankakee, Illinois, where Fassl recovered a 9-millimeter semiautomatic firearm.  *Id.* at 187-88.  A police ballistics expert testified that the five bullets retrieved from Bernard's body and several cartridges found at the scene of the shooting matched to the gun.  *Id.* at 68.

Petitioner confessed to the shooting eight days after it happened, and his confession was captured on videotape.  *See* Dckt. 28-13, at 53-69 (transcript of confession).  Petitioner, who was 17 years old at the time, stated that "Me, Garvey [Bernard, the victim], T.J., and Mel walked up [to 95th and Ashland] to get something to drink."  *Id.* at 57.  Petitioner saw the cashier place a bottle of liquor in a brown paper bag, and also saw "Garvey [Bernard] putting his money in his left pants pocket. . . .  He had a lot of money like a thick wad."  *Id.* at 57-58.

Petitioner said he and Williams, while standing outside the store, discussed robbing Bernard and splitting the money between Petitioner, Williams, and Gaddy.  *Id.* at 58.

All four men then went to a car lot because Bernard was looking to buy a car.  *Id.* at 58-59.  Petitioner and Gaddy told Bernard that they had a "car auto sales book . . . for the month of April" at their apartment, "[a]nd Garvey [Bernard] believed us."  *Id.* at 59-60.

The men went to the apartment.  Petitioner and Gaddy went upstairs, while Bernard and Williams waited in the alley.  *Id.* at 60-61.  Gaddy retrieved a gun and initially said he was going to rob Bernard.  *Id.*  Petitioner, in an attempt to ensure that Bernard would not get hurt, convinced Gaddy to give Petitioner the gun.  *Id.*  Petitioner and Gaddy returned downstairs, and the four men began walking through the alley.  *Id.* at 62.

---

[2]  Officer Fassl and the prosecutor referred to Harold Campbell as Petitioner's uncle.  *See* Dckt. 28-6, at 187.  Petitioner, however, clarified during trial that Harold was his cousin.  *See* Dckt. 28-7, at 36, 64.  This Court defers to Petitioner with respect to how he and Harold are related.

Petitioner confessed: "So I'm behind everybody. I'm behind Garvey. Garvey pats his pocket and looks at me . . . . Like he was reading my mind or something. . . . I pulled the 9 millimeter out, cocked it. That's when I saw that it was loaded. . . . Garvey heard the gun when it cocked. He turned around. He sees it with his own eyes. His eyes got big. He turns around. . . . Puts his hands over his ears and run." *Id.* at 62-63. Petitioner said, "Give it up, G." *Id.* When Bernard started running, Petitioner panicked and fired the gun three or four times. *Id.* at 63. Bernard fell, and Petitioner shot him again "[l]ike three more times." *Id.* The gun jammed, and Petitioner took the clip out, put it back in, and cocked the gun. *Id.*

Garvey – who, according to Petitioner, was still alive – told Petitioner to take the money. Gaddy did and hopped the fence next to Bernard. *Id.* at 64. Petitioner fired once more, and then ran. *Id.*

Before trial, Petitioner, through counsel, filed a motion to suppress his statement. *See* Dckt. 28-1, at 67-70. Petitioner argued that: (1) he did not properly receive or understand the warnings under *Miranda v. Arizona*, 384 U.S. 436 (1966); (2) he thought the assistant state's attorney taking the statement was his attorney; (3) he was not allowed to use the bathroom; (4) he was physically and verbally abused by officers; (5) an officer slapped him; and (6) he was threatened with a death-penalty sentence if he did not confess. *Id.*; *see also* Dckt. 28-3. An evidentiary hearing was held. *See* Dckt. 28-3. The trial court, discrediting Petitioner's testimony and crediting the testimony from the assistant state's attorney who took the statement, found that: (1) the government explained Petitioner his *Miranda* rights; (2) he was not mistreated, threatened, or otherwise coerced; (3) though he was a "youthful offender," he was experienced with the criminal process and understood his rights, and understood that the attorney taking his

statements was a prosecutor and not his attorney; and (4) he gave his statement knowingly and voluntarily. *Id.* at 149-56 (quote on 154).

Following the suppression hearing, Petitioner fired his attorney and chose to proceed *pro se*. *See* Dckt. 28-4, at 3-13. After ensuring that Petitioner understood the charges against him, the penalties associated with the offenses, and his right to an attorney, the trial court determined that Petitioner knowingly and intelligently waived his right to counsel. The trial court did not appoint standby counsel. *Id.* at 7-11. Petitioner represented himself at trial. *See* Dckt. 28-5; 28-6; 28-7.

During deliberations, the jury sent a note to the judge asking why Harold Campbell (Petitioner's cousin) and Melvin Gaddy did not testify. *See* Dckt. 28-7, at 85-86; Dckt. 28-8, at 5. The judge responded that he did not know and could not explain the prosecution's rationale for not calling those witnesses and that the jury had all the evidence. *See* Dckt. 28-8, at 5-6. The jury then found Petitioner guilty of first-degree murder and armed robbery, and also found that he personally fired the gun that caused Bernard's death. *See* Dckt. 28-7, at 86. Petitioner, who accepted the appointment of counsel for post-trial motions and sentencing, *see id.* at 88-89, was sentenced to 60-years imprisonment for murder, 30-years imprisonment for armed robbery, and an additional 50 years of imprisonment for personally firing the gun that caused the victim's death. *Id.* at 194.

**Petitioner's Direct Appeal**

Through another appointed attorney, Petitioner made the following arguments on direct appeal: (1) the trial court erred when it refused to appoint standby counsel; (2) the court impermissibly allowed hearsay evidence (testimony from Officer Fassl that he found the gun after talking to Harold Campbell); (3) the prosecutor made improper statements during closing

arguments; (4) the trial court's comments during Petitioner's cross-examination of witnesses were improper; (5) Petitioner's sentence was excessive; and (6) Petitioner was impermissibly sentenced twice for the same act. *See* Dckt. 28-12. The state appellate court, rejecting all but Petitioner's sentencing arguments, affirmed Petitioner's convictions, vacated his sentence, and remanded for resentencing. *See* Dckt. 28-18, at 38-42. On remand, Petitioner was sentenced to a total of 110 years of imprisonment. He received 85 years for murder (which included a 35-year enhancement for personally firing the gun) plus 25 years for armed robbery. *See* Dckt. 28-24. The state appellate court affirmed the second sentence. *Id.*

Petitioner, through the attorney who represented him on appeal, filed a petition for leave to appeal (PLA) with the Illinois Supreme Court. He argued that: (1) the trial court should have appointed standby counsel, and (2) the trial court was required to explain to prospective jurors that defendants are presumed innocent and their decision not to testify cannot be considered against them, because Illinois Supreme Court Rule 431(b), which was amended to include this requirement while Petitioner's case was on appeal, must be applied retroactively. *See* Dckt. 28-19. The state supreme court denied the PLA. *See* Dckt. 28-20.

### Petitioner's Post-Conviction Proceedings

Petitioner, proceeding *pro se*, filed a post-conviction petition in the state trial court. *See* Dckt. 28-10, at 29. He argued six claims: (1) his attorney on direct appeal was ineffective for raising the claim that hearsay statements were admitted at trial about the gun (Petitioner wanted instead to raise the issue himself in his post-conviction petition); (2) his post-trial attorney was ineffective when she failed to argue in a motion for new trial that Petitioner was prejudiced when the court pressured him to start trial in prison clothes, as opposed to civilian clothes (on the first day of trial, Petitioner refused to wear the civilian clothes that had been provided because they

6

were "ugly" and did not fit properly); (3) pretrial counsel was ineffective for seeking suppression of Petitioner's confession without including his school records to show he had been in special education; (4) pretrial counsel was ineffective for not arguing that Petitioner's confession occurred more than 48 hours after his arrest but before a probable cause hearing; (5) pretrial counsel was ineffective for not filing a motion to suppress identifications (Petitioner believed Johnson could not have made a positive identification from a third-story apartment); and (6) pretrial counsel was ineffective when she failed to hire an investigator to interview Petitioner's alibi witnesses. *Id.* at 35-42.

The state trial court, after concluding that none of Petitioner's claims had merit, dismissed his post-conviction petition at the first stage of review as frivolous and patently without merit. *See* Dckt. 28-10, at 67-73.

Counsel was appointed for Petitioner for his post-conviction appeal. That attorney raised only one issue: in moving to suppress the confession, Petitioner's pretrial attorney was ineffective for failing to include Petitioner's school records showing his low test scores and special education. *See* Dckt. 28-27.

The appellate court determined that Petitioner's ineffective assistance of pretrial counsel claim was patently without merit given that the "evidence against Petitioner was overwhelming" even if his confession was suppressed. *See* Dckt. 28-30, at 4. The appellate court recounted the evidence of the two eyewitnesses – John Williams (who was only a few feet from Petitioner when he shot Bernard) and Reginald Johnson (who witnessed the shooting and robbery from his third story apartment overlooking the alley) – and the ballistics evidence showing that all the bullets recovered from Bernard's body and casings found at the scene came from the nine-millimeter gun found with the assistance of Petitioner's cousin. *Id.* at 4-5. "In light of the

overwhelming evidence against defendant," according to the state appellate court, "even absent the statement he made to the police, we cannot say it is arguable that defendant was prejudiced by counsel's alleged deficient performance." *Id.* at 5.

Petitioner filed a motion for rehearing, arguing that post-conviction appellate counsel was ineffective for raising only one of the six claims Petitioner asserted in his post-conviction petition. *See* Dckt. 28-31. The state appellate court denied the motion. *See* Dckt. 28-32.

Petitioner then filed a petition for leave to appeal (PLA), challenging: (1) his post-conviction appellate attorney's failure to raise five claims asserted in the post-conviction petition, and (2) the appellate court's denial of his motion for rehearing without addressing the claims therein. *See* Dckt. 28-33. Petitioner did not challenge the appellate court's denial of the one claim raised in the post-conviction appeal – that pretrial counsel was ineffective for failing to include Petitioner's school records with the motion to suppress his confession. *Id.* The Illinois Supreme Court denied the PLA. *See* Dckt. 28-34.

## PETITIONER'S 28 U.S.C. § 2254 PETITION

It's not easy to clearly describe Petitioner's § 2254 claims, in part because his petition does not clearly describe them, either. The form for the § 2254 petition required Petitioner to state briefly "every ground on which you claim that you are being held unlawfully." *See* Dckt. 1, at 18-19. Petitioner stated that he is being held unlawfully in violation of the Constitution on the following grounds:

> Ground One: "Six[th] Amendment – the right to effective assistance of counsel. Ineffective assistance on appellate counsel during direct appeal (supporting facts) additional pages added;"

> Ground Two: "14th Amendment – due process clause, the right to effective assistance of counsel on first appeals. (supporting facts.) Additional pages added. Ineffective assistance on appellate counsel during postconviction appeal;"

8

> Ground Three: "Petitioner Tony Campbell has fully exhausted his remedies on the claim that he has been prejudiced by the denial of effective assistance of counsel during post-conviction appeal, where appellate appointed counsel briefed only one of six dismissed postconviction issues. Appellate court – petition for rehearing. Illinois Supreme Court – petition for leave to appeal;"
>
> Ground Four: "The Petitioner has demonstrated that by appellate appointed counsel only briefing one of 6 dismissed postconviction issues, such ineffectiveness would prejudice the Petitioner from fully exhausting his remedies on the other five dismissed issues. The Petitioner has made a strong showing that proper adjudication has been attempted on his behalf. Supporting facts on grounds on additional sheets."

*Id.*

Petitioner's "supporting facts" following his grounds for relief focus mainly on the ineffectiveness of his attorney with the post-conviction appeal. *Id.* at 20-28. He states that the attorney argued only one of the six issues Petitioner raised in his post-conviction petition. He adds that his attorney on the post-conviction appeal failed to properly explain to the court Petitioner's claim that his attorney on the direct appeal was ineffective by making a hearsay argument (that is, that the trial court should have excluded evidence about recovery of the murder weapon on hearsay grounds). *Id.* at 20-24. Other than the alleged ineffectiveness of the post-conviction appellate attorney, Petitioner's "supporting facts" address only one other claim – that pretrial counsel was ineffective for not introducing at the motion to suppress hearing documents demonstrating "that Petitioner was nearly illiterate during police interrogation" and could not have intelligently waived his rights when he confessed. *Id.* at 25-26.

Liberally construing the § 2254 petition, as this Court must, *see Ambrose v. Roeckeman*, 749 F.3d 615, 618 (7th Cir. 2014), Petitioner appears to assert three claims: (1) ineffective assistance of counsel in the post-conviction appeal for failing to present five claims Petitioner

9

argued in his post-conviction petition; (2) ineffective assistance of counsel on direct appeal for raising the hearsay claim, which Petitioner believes prejudiced his ability to argue it in his post-conviction petition; and (3) ineffective assistance of pretrial counsel for not including Petitioner's school records with the motion to suppress his confession.[3] None of these claims warrants relief under § 2254.

## I.     Ineffective Assistance of Post-Conviction Appellate Counsel (Claim One)

Petitioner argues that the attorney appointed to represent him in his post-conviction appeal was ineffective for not raising five claims Petitioner himself presented to the trial court in his post-conviction petition. Federal habeas law specifically forbids such a claim.

Section 2254(i) states that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." There is no "constitutional right to counsel on appeal from the state habeas trial court judgment." *Coleman v. Thompson*, 501 U.S. 722, 755 (1991); *see also Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017). A state prisoner may seek habeas corpus relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2254(a). Simply because an attorney was appointed to represent Petitioner in his state post-conviction appeal does not mean that a constitutional right to such representation existed. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (no

---

[3] Respondent describes Petitioner's § 2254 petition as asserting only two claims: (1) pretrial counsel was ineffective for failing to attach school records to the motion to suppress the confession; and (2) post-conviction appellate counsel was ineffective for failing to raise claims Petitioner presented in his post-conviction petition. *See* Dckt. 27, at 7. Petitioner states in his reply brief that Respondent misunderstands his first ground for relief, which (according to Petitioner) asserts ineffective assistance of counsel on direct appeal when "counsel raised the waived issue of hearsay concerning the recovery of the weapon" which "should have been preserved for postconviction relief and should not have been raised on [direct appeal]." *See* Dckt. 29, at 4. Although his reply brief suggests that Petitioner is only asserting two claims, and is not asserting ineffective assistance by his pretrial attorney's failure to include school records with the motion to suppress, the § 2254 petition discusses the claim, and the Court will liberally construe the petition as asserting it. That makes three claims, total.

constitutional right to an attorney exists in collateral proceedings, even when state law required the appointment of counsel for those proceedings).

Although the ineffective assistance of post-conviction counsel warrants no § 2254 relief, such ineffective assistance can, in limited circumstances, constitute cause for a procedurally defaulted claim to allow federal review of the claim. *See Martinez v. Ryan*, 566 U.S. 1, 17 (2012). The Court will consider whether post-conviction counsel's ineffectiveness suffices as cause to allow a merits review of defaulted § 2254 claims when the Court addresses those claims. But to the extent Petitioner seeks to assert ineffective assistance of post-conviction counsel as its own ground for § 2254 relief, the claim is without merit and denied.

## II.     Ineffective Assistance of Counsel on Direct Appeal (Claim Two)

Petitioner argues that his attorney on direct appeal was ineffective. The claim rests on when and where the attorney made an argument.

Petitioner argues that his counsel raised a claim on direct appeal that Petitioner wanted to argue in his post-conviction petition. Specifically, his attorney on direct appeal argued that trial court allowed hearsay when the officers testified about his cousin Harold Campbell leading them to the murder weapon. Petitioner believes he was prevented from asserting the claim in his post-conviction petition because his attorney raised it on direct appeal.

This claim is both procedurally defaulted and without merit. A meritless argument in a post-conviction petition is no better than a meritless argument on direct appeal.

The claim is procedurally defaulted because Petitioner did not "fairly present" the claim to the state courts. *See Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014). This "fairly present" type of procedural default "is an outgrowth of the statutory requirement that a habeas petitioner exhaust his remedies in state court before taking his case to federal court." *Id.* at 269

n.4. State prisoners seeking federal habeas corpus relief must "exhaust[] the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(1)(A). They must "give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts," which is accomplished "by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014) ("The complete round requirement means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory.").

Petitioner asserted this claim in his state post-conviction trial, but his post-conviction appellate brief did not assert the claim. Petitioner did not raise the claim again until the post-conviction appellate court had denied his appeal, at which point Petitioner raised the argument in a petition for rehearing (and later, in petition for leave to appeal to the Illinois Supreme Court). When determining if a claim has been exhausted, courts "ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, *i.e.*, whether he has fairly presented his claims to the state courts." *Boerckel*, 526 U.S. at 848 (emphasis in original); *Lockheart v. Hulick*, 443 F.3d 927, 929 (7th Cir. 2006) ("To preserve a claim for federal collateral review, the petitioner must 'fairly present' it to all levels of the state judiciary.").

Illinois procedural rules require parties to make arguments in their opening briefs, or else they are forfeited. "Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." *See* Illinois S. Ct. Rule 341(h)(7). This rule applies both to attorneys and to *pro se* litigants. *See Finko v. City of Chicago Dep't of Admin. Hearings*, 2016 IL App (1st) 152888, ¶ 23, 70 N.E.3d 203, 209 (2015). "[A] petitioner does not fully and

12

fairly present a federal claim to the state courts when he raises that claim for the first time in a petition for rehearing before the state appellate court or in a petition asking the state supreme court for leave to appeal." *Hidou v. Lamb*, 2019 WL 2773639, at *9 (N.D. Ill. 2019) (citing *Lewis v. Sternes*, 390 F.3d 1019, 1031 (7th Cir. 2004)); *see also Cruz v. Warden of Dwight Corr. Ctr.*, 907 F.2d 665, 669 (7th Cir. 1990) ("[n]or would it seem that presenting [a habeas claim] to a state appellate court in a petition for rehearing would constitute a fair presentation"). Petitioner's attempt to argue his claim by presenting it to the state post-conviction appellate court in a petition for rehearing did not fairly present it to that court, thus failing to satisfy § 2254(b)'s exhaustion requirement and procedurally defaulting the claim.

For the same reasons, the claim is also procedurally defaulted because the Illinois state court "refuse[d] to reach the merits of [Petitioner's claim] because [it was] not raised in accord with [Illinois's] procedural rules." *See Richardson*, 745 F.3d at 268–69. As noted above, Illinois's Supreme Court rules state that any argument not raised in the appeal brief is forfeited. *See* Illinois S. Ct. Rule 341(h)(7). Petitioner's failure to follow the Illinois Supreme Court procedural rules is an "independent and adequate state procedural ground[]" for denying Petitioner's claim on post-conviction review. *See Richardson*, 745 F.3d at 269.

This Court acknowledges that Petitioner was placed in a difficult position in his post-conviction appeal once his appointed attorney filed a brief raising only one of Petitioner's six post-conviction claims. But Petitioner had the choice to "stick with his counseled briefs, which didn't mention [five of his] claim[s], or fire his attorney and submit his pro se brief, which raised [them]." *See Clemons v. Pfister*, 845 F.3d 816, 820 (7th Cir. 2017). Alternatively, he could have "roll[ed] the dice" and filed a supplemental brief with the "hope that the court would make an exception to the rule against hybrid representation and accept his pro se supplemental brief." *Id.*

But filing his claims in a petition for rehearing after the appellate court issued its decision clearly did not suffice to "fairly present[] his claims to the state courts." *See Boerckel*, 526 U.S. at 854. And it did not comply with Illinois procedural rules for preserving and presenting claims. *See Richardson*, 745 F.3d at 268–69. Accordingly, this claim was procedurally defaulted. *See Boerckel*, 526 U.S. at 854; *Richardson*, 745 F.3d at 268–69. And absent an excuse, this Court cannot review procedurally defaulted claims. *See Richardson*, 745 F.3d at 268 ("'When a state court resolves a federal claim by relying on a state law ground that is both independent of the federal question and adequate to support the judgment, federal habeas review of the claim is foreclosed.'") (quotation omitted).

A procedural default, however, "may be excused when the petitioner shows both cause for the default and actual prejudice, or shows that federal review is needed to prevent a fundamental miscarriage of justice." *Tabb v. Christianson*, 855 F.3d 757, 765 (7th Cir. 2017) (citing *Coleman*, 501 U.S. at 750). To demonstrate cause, the prisoner must "show that some objective factor external to the defense impeded [hi]s efforts to comply with the State's procedural rule." *Davila*, 137 S. Ct. at 2065.

As previously noted, ineffective assistance of post-conviction counsel can sometimes constitute cause. But it occurs only in states where claims of ineffective assistance of trial counsel cannot be asserted on direct appeal, and a state prisoner cannot raise that claim until his post-conviction petition. *See Trevino v. Thaler*, 569 U.S. 413, 428 (2013); *Martinez v. Ryan*, 566 U.S. 1, 11 (2012) ("[w]here . . . the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial, the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim"). The exception established in *Trevino* and *Martinez*, however, does not apply

in Illinois, which allows claims ineffective assistance of trial counsel on direct appeal. *See Crutchfield v. Dennison*, 910 F.3d 968, 978 (7th Cir. 2018) ("We decline to extend the *Martinez–Trevino* exception to Illinois prisoners."), *cert. denied*, 139 S. Ct. 1587 (2019). Furthermore, the *Martinez/Trevino* exception applies only to claims of ineffective assistance of counsel at trial, not "claim[s] of ineffective assistance of appellate counsel," which is the claim Petitioner seeks to raise. *Davila*, 137 S. Ct. at 2065. The ineffective assistance that Petitioner alleges he received in his post-conviction appeal does not suffice as cause for the default.

Nor can Petitioner demonstrate that a fundamental miscarriage of justice would result if this Court did not review his claim. For this exception to procedural default, Petitioner must show "actual innocence," which requires "'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial,' . . . [demonstrating] that it is 'more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Jones v. Calloway*, 842 F.3d 454, 461 (7th Cir. 2016) (quoting *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995)). Petitioner makes no such showing. The record shows actual guilt, not actual innocence.

Accordingly, Petitioner procedurally defaulted his claim of ineffective assistance of counsel on direct appeal for raising a claim he wanted to save for his post-conviction petition, and neither exception to procedural default applies.

Although this claim is procedurally defaulted from federal habeas review, the Court nonetheless notes that the claim is also clearly without merit.

Petitioner asserts that appellate counsel was ineffective for raising the hearsay claim on direct appeal because raising it then prejudiced Petitioner's ability to argue it in his state post-conviction petition. *See* Dckt. 28-10, at 35 (the clearest description of Petitioner's argument is in

15

his post-conviction petition). This claim makes little sense. Petitioner's attorney on direct appeal was able to obtain a merits review of the hearsay argument, which, as Petitioner acknowledges, he waived at trial. *See* Dckt. 28-18, at 23-27. The state appellate court determined that the claim had no merit since Officer Fassl's testimony about how he obtained the murder weapon did not mention the contents of any conversations with Petitioner's cousin Harold Campbell and, thus, was not inadmissible hearsay. *Id.* The state trial court on post-conviction review agreed, *see* Dckt. 28-10, at 70, and no matter where Petitioner brought his hearsay claim, it would have failed.

To succeed on a claim of ineffective assistance of counsel, Petitioner must show that his appellate attorney's decision to raise the claim on direct appeal both constituted deficient performance and prejudiced Petitioner. *See Strickland v. Washington*, 466 U.S. 668, 687-94 (1984). Petitioner has not demonstrated why his appellate attorney's decision to argue the hearsay claim on direct appeal was objectively unreasonable,[4] or why Petitioner would have fared better if he raised the claim for the first time in his post-conviction petition. As noted by the state trial court on post-conviction review, the hearsay claim lacked merit.

Simply put, the argument would have failed no matter when Petitioner had raised it. A meritless argument in a post-conviction petition is no better than a meritless argument on direct appeal.

Accordingly, the Court denies Petitioner's claim that his attorney on direct appeal was ineffective for raising the hearsay claim (instead of allowing Petitioner to raise it in his post-conviction petition) because this claim is procedurally defaulted and without merit.

---

[4] In Illinois, claims based on the trial record "that could have been raised on direct appeal but were not are forfeited." *People v. Petrenko*, 237 Ill. 2d 490, 499, 342 Ill. Dec. 15, 931 N.E.2d 1198 (2010). The hearsay claim, which concerned Officer Fassl's trial testimony, was clearly based on the trial record, and the state appellate court was able to review the claim's merits. *See* Dckt. 28-18, at 23-27. Had the claim not been raised on direct appeal, it likely would have been forfeited.

### III.    Ineffective Assistance of Pretrial Counsel (Claim III)

Petitioner argues that his pretrial attorney was ineffective for not including Petitioner's school records with the motion to suppress.  This claim, like Claim Two, is procedurally defaulted and without merit.

Petitioner raised this claim in the state trial court in his post-conviction petition and in his post-conviction appeal.  However, his PLA to the Illinois Supreme Court focused entirely on the five claims appellate counsel omitted from the post-conviction appellate brief.  *See* Dckt. 28-33. Petitioner did not address the one claim that was raised in his post-conviction appeal – the ineffectiveness of pretrial counsel for not including school records with the motion to suppress. Nor did Petitioner argue this issue in his PLA on direct appeal.  *See* Dckt. 28-19.  The Illinois Supreme Court was never presented with this claim, and Petitioner did not "invoke[] one complete round of the State's established appellate review process."  *See Boerckel*, 526 U.S. at 845.  And under Illinois's procedural rules for asserting arguments on appeal, Petitioner forfeited the argument by failing to make it in his PLA.  *See* Illinois S. Ct. Rule 341(h)(7).  So the claim was "not raised in accord with [Illinois's] procedural rules."  *See Richardson*, 745 F.3d at 268– 69.  This claim is thus procedurally defaulted.  *See Boerckel*, 526 U.S. at 845; *Richardson*, 745 F.3d at 268–69.

Petitioner makes no argument as to why this claim was not presented in his PLAs to establish cause for the default.  Nor does he point to new evidence demonstrating actual innocence to show that a fundamental miscarriage of justice would result if this Court did not review the claim.  *See Jones*, 842 F.3d at 461.  Accordingly, Petitioner's claim of ineffective assistance based on pretrial counsel's failure to include school records with the motion to

suppress is procedurally defaulted and Petitioner demonstrates neither exception to excuse the default.

But even if this Court could review the merits of the claim, § 2254 relief is not warranted. The state appellate court in Petitioner's post-conviction appeal denied this claim upon determining that he could not establish prejudice given the overwhelming evidence of his guilt. Citing the controlling *Strickland* two-prong ineffective assistance standard, the state court held that Petitioner had to show both "(1) that his counsel's representation fell below an objective standard of reasonableness; and (2) but for counsel's errors, there is a reasonable probability that the result of the trial would have been different." *See People v. Campbell*, 2014 IL App (1st) 120577-U, ¶ 24 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

> In the instant case, we need not determine whether it is arguable that counsel's performance fell below an objective standard of reasonableness. This is because defendant has not presented an arguable claim of prejudice. *See Strickland*, 466 U.S. at 697 (if a claim of ineffectiveness may be disposed of due to lack of prejudice, a reviewing court is not required to address whether counsel's performance was unreasonable).

> Here, even if trial counsel had been successful on the motion to suppress defendant's statement, it is not arguable that the outcome of defendant's trial would have been different. As we found in our initial decision on direct appeal, the evidence against defendant was overwhelming. *People v. Campbell*, No. 1–05–0927, slip op. at 35 (unpublished order under Supreme Court Rule 23).

> Two eyewitnesses testified that defendant shot the victim and his accomplice robbed him. The testimony of a single eyewitness is sufficient to sustain a criminal conviction. *See People v. Castillo*, 372 Ill. App. 3d 11, 20 (2007). The first eyewitness, John Williams, was with defendant, the victim, and Melvin Gaddy when defendant pulled a gun, pointed it at the victim, and said, "Give it up." As Williams ran, he heard shots, looked back, and saw defendant shooting the victim, who fell to the ground. Williams then watched as Gaddy went through the victim's pockets and defendant shot the victim twice more. The second eyewitness, Reginald Johnson, heard several gunshots, looked out his window,

18

and saw defendant and Gaddy standing over the victim, who was lying on the ground. As Johnson watched, Gaddy took the victim's wallet, after which defendant shot the victim again. Finally, in addition to the eyewitness testimony, a forensic scientist testified that all the fired cartridges he received from the scene and the bullets recovered from the victim's body were fired from the handgun recovered by the police with the assistance of defendant's uncle.

In light of the overwhelming evidence against defendant, even absent the statement he made to the police, we cannot say it is arguable that defendant was prejudiced by counsel's alleged deficient performance. Defendant's legal theory of ineffective assistance of counsel is contradicted by the record. Therefore, the petition lacks an arguable basis in law. *See Hodges*, 234 Ill.2d at 16. Accordingly, summary dismissal of the petition was proper.

*Campbell*, 2014 IL App (1st) 120577-U, ¶¶ 25-28.

Federal habeas relief is unavailable "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*See* 28 U.S.C. § 2254(d). A state-court decision "is contrary to clearly established federal law 'if it applies a rule that contradicts the governing law set forth' in Supreme Court decisions or 'confronts a set of facts that is materially indistinguishable from' a Supreme Court decision but comes out differently." *Janusiak v. Cooper*, 937 F.3d 880, 888 (7th Cir. 2019) (quoting *Brown v. Payton*, 544 U.S. 133, 141 (2005)). "Unreasonable," under § 2254(d) means objective unreasonableness, "something . . . lying well outside the boundaries of permissible differences of opinion." *McGhee v. Dittmann*, 794 F.3d 761, 769 (7th Cir. 2015). As long as this Court is "satisfied that the [state court] took the

constitutional standard seriously and produce[d] an answer within the range of defensible positions, we will affirm the district court's decision to deny the writ." *Felton v. Bartow*, 926 F.3d 451, 464 (7th Cir. 2019).

The state appellate court relied on the correct Supreme Court standard for an ineffective assistance of counsel claim – (1) deficient performance and (2) prejudice – and correctly stated that to demonstrate prejudice, a petitioner had to show that, "but for counsel's errors, there is a reasonable probability that the result of the trial would have been different." *See Campbell*, 2014 IL App (1st) 120577-U, ¶ 24; *see Strickland*, 466 U.S. at 694. So the decision was not contrary to federal law clearly established by Supreme Court precedent. Additionally, the state court was not unreasonable when it determined Petitioner had to establish a reasonable probability that, without his confession being introduced into evidence, he would not have been convicted. To succeed on an ineffective assistance claim with respect to a motion to suppress a confession, "a petitioner must demonstrate that 'there was both a reasonable probability that he would have prevailed on the motion to suppress and a reasonable probability that, if his confessions were suppressed, he would have been acquitted.'" *Hicks v. Hepp*, 871 F.3d 513, 526 (7th Cir. 2017) (quoting *Bynum v. Lemmon*, 560 F.3d 678, 685 (7th Cir. 2009)).

Finally, the state appellate court's description of the evidence (as summarized in the background section of this opinion) was supported by the record. The state court did not make an "unreasonable determination of the facts in light of the evidence." *See* § 2254(d)(2). Even if Petitioner could clear the hurdle of procedural default, federal habeas relief is unavailable because the state appellate court's denial of this claim was neither contrary to nor an unreasonable application of established Supreme Court law. Claim Three is denied as both procedurally defaulted and without merit.

Having determined that none of Petitioner's claims warrants relief under § 2254, the Court denies his petition.

## Certificate of Appealability and Notice of Appeal Rights

Petitioner is advised that this is a final decision ending his case in this Court. If he wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). He need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if he seeks the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). A Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

The Court declines to issue a certificate of appealability. Petitioner cannot make a substantial showing of the denial of a constitutional right, or that reasonable jurists would debate, much less disagree, with this Court's resolution of Petitioner's claims. *See Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

21

**CONCLUSION**

Petitioner's habeas corpus petition (Dckt. 1) is denied.  Any pending motions are denied as moot.  The Court declines to issue a certificate of appealability.  The Clerk is instructed to: (1) enter a judgment in favor of Respondent and against Petitioner; (2) terminate Respondent Kimberly Butler from the docket and add Frank Lawrence, Acting Warden of Menard Correctional Center, as Respondent; and (3) change the case caption to *Campbell v. Lawrence*. Civil Case Terminated.

Date:  July 10, 2020

Steven C. Seeger
United States District Judge